# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **Jacqueline L. Taylor,** | ) Case No. 20-40241-can13 |
| | ) |
| Debtor. | ) |
| | ) |

### ORDER SUSTAINING TRUSTEE'S OBJECTION TO EXEMPTIONS

Debtor Jacqueline L. Taylor claims an exemption in a Flexible Premium Deferred Annuity issued 5/25/04 with Midland National Life Insurance Company (the "Annuity") under Mo. Rev. Stat. § 513.430.1(10)(e). The chapter 13 trustee objects to the claimed exemption. At status conferences held on August 11, 2020 and October 27, 2020, the parties agreed to waive the right to put on evidence and oral argument and to submit the matter to the court on stipulated facts and briefing, which is now complete. The court incorporates herein by reference the *Joint Stipulation of Facts Between Debtor, Jacqueline L. Taylor, and Standing Chapter 13 Trustee* (the "*Stipulation*").[1] For the reasons that follow, the trustee's Objection to Exemptions[2] is SUSTAINED.

### *Background*

Ms. Taylor filed this chapter 13 bankruptcy case on February 5, 2020, listing the Annuity on her Schedule A/B with a value of $105,184.28. According to the *Stipulation*, Ms. Taylor purchased the Annuity in 2004, funded with $98,888.60 in funds she inherited from her father.[3] Also according to the *Stipulation*, the Annuity had surrender value of $102,979.70 as of its most

---

[1] ECF No. 35.
[2] ECF No. 13.
[3] Ms. Taylor's counsel stated at the hearing held on October 27, 2020 that the vast majority, if not all, of the funds to purchase the annuity came from the inheritance, although that "fact" is not reflected in the *Stipulation*.

recent quarterly statement. Ms. Taylor's schedule I shows she was to begin receiving monthly annuity payments of $800 in February or March of this year, which supplement her social security and pension income. She claims the Annuity fully exempt pursuant to Missouri Revised Statute § 513.430.1(10)(e).

### *Burden of Proof*

"A claimed exemption is presumptively valid." *In re Danduran*, 657 F.3d 749, 754 (8th Cir. 2011). The party objecting to a claimed exemption – here, the trustee – has the burden of proving that the exemptions are not properly claimed. Fed. R. Bankr. P. 4003(c). "If the objecting party fails to produce evidence in support of the objection, any factual issue must be resolved in favor of the debtor." *In re Danduran*, 657 F.3d at 754. "If the Trustee meets his burden to produce evidence in support of the objection, the burden of production shifts to the debtor to show that the claimed objection is proper." *Id*. The burden of persuasion, however, remains with the trustee. *Id.*

"[E]xemption statutes must be construed liberally in favor of the debtor and in light of the purposes of the exemption." *In re Andersen*, 259 B.R. 687, 690 (B.A.P. 8th Cir. 2001) (citing *In re Wallerstedt*, 930 F.2d 630, 631 (8th Cir. 1991)). Although exemptions are to be liberally construed in favor of the debtor, *Murray v. Zuke*, 408 F.2d 483, 487 (8th Cir. 1969), they are also to be construed for the purpose of achieving the legislative intent, not to "extend the provisions of the legislative grant." *In re Eilbert*, 162 F.3d 523, 526 (8th Cir. 1998) (citations omitted). *See also In re Helming*, 567 B.R. 357, 361 (B.A.P. 8th Cir. 2017) ("[A] bankruptcy court must be careful to not substantially depart from the express language of the exemption or to extend the legislative grant as expressed by Congress.") (citations and internal quotation marks omitted).

2

*Mo. Rev. Stat. § 513.430.1(10)(e)*

Missouri has opted out of the federal bankruptcy exemption scheme found in 11 U.S.C. § 522. *See* Mo. Rev. Stat. § 513.427. Ms. Taylor claims the Annuity exempt under Missouri Statute § 513.430.1(10)(e), which exempts a person's right to receive –

> Any payment under a stock bonus plan, pension plan, disability or death benefit plan, profit-sharing plan, nonpublic retirement plan or any plan described, defined, or established pursuant to section 456.014, the person's right to a participant account in any deferred compensation program offered by the state of Missouri or any of its political subdivisions, or annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person . . ..

Mo. Rev. Stat. § 513.430.1(10)(e).

To claim an exemption under this provision, the right to receive payments must meet three requirements. The right to receive payments must be:

(1) from a plan or contract of the kind described;

(2) made "on account of illness, disability, death, age or length of service," and

(3) reasonably necessary for the debtor's support or for the support of a dependent of the debtor.

*In re Helming*, 567 B.R. at 361 (interpreting Missouri's § 513.430.1(10)(e)) (citing *Kuhrts*, 405 B.R. 333, 334 (Bankr. W.D. Mo. 2009) (interpreting the Missouri statute); *Rousey v. Jacoway*, 544 U.S. 320 (2005) (interpreting 11 U.S.C. § 522(d)(E)); *Andersen*, 259 B.R. 687, 691 (B.A.P. 8th Cir. 2001) (same)).

The trustee here stipulated to the third requirement – that Ms. Taylor needs the annuity payments for her support.[4] The questions here are whether the Annuity payments are from a plan or contract of the kind described in the statute, and whether, as Ms. Taylor argues, the payments are made "on account of" death because the Annuity contains a death benefit.

---

[4] *Stipulation* (ECF No. 35) at ¶ 9.

3

Before turning to these two specific requirements, however, the Eighth Circuit has enunciated what it referred to as "general principles" on the exemptability of annuity payments under exemption statutes similar to § 513.430.1(10)(e). *In re Eilbert*, 162 F.3d 523 (8th Cir. 1998).

In *Eilbert*, the 74-year-old debtor used funds from her deceased spouse's estate to purchase a $450,000 single premium annuity, electing at the time to begin receiving annuity payments shortly after the purchase, and in anticipation that a creditor would obtain a significant personal injury judgment against her. About a year later, after the creditor obtained the anticipated judgment, the debtor filed bankruptcy and claimed the annuity exempt under an Iowa statute like Missouri's § 513.430.1(10)(e).[5]

The debtor in *Eilbert* argued that her annuity was exempt under the Iowa statute because (i) it was an "annuity," (ii) she purchased it more than one year before filing bankruptcy, and (iii) she began receiving payments at age 74, which was "well past" retirement age. She argued that the annuity payments were thus from a "pension, annuity, or similar plan or contract" and were being made "on account of" her age, as required by the statute. *Id.* at 526.

Rejecting that argument, the Eighth Circuit turned to the nearly identical federal bankruptcy exemption found in 11 U.S.C. § 522(d)(10)(E).[6] In so doing, the Eighth Circuit held, as a "general principle," that Congress intended the similar federal statute to exempt "certain benefits that are akin to future earnings of the debtor." *Id.* (interpreting 11 U.S.C. § 522(d) ((quoting H.R. Rep. 95-595 at 362 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6318)).

---

[5] The Iowa statute at issue in *Eilbert* provided an exemption for: "[t]he debtor's rights in ... [a] payment or a portion of a payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service. . . ." Iowa Code § 627.6(8)(e).

[6] Section 522(d)(10)(E) of the Bankruptcy Code provides an exemption for "a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. . . ." 11 U.S.C. § 522(d)(10)(E).

4

Acknowledging the liberal construction of exemptions, the Eighth Circuit held that if it were to accept the debtor's argument, it "would convert a statute intended to protect 'benefits that are akin to future earnings' – which for the elderly are typically retirement earnings – into a statute conferring vastly broader bankruptcy protection." *Id*. Rather, the *Eilbert* court held, if the annuity payments were "on account of age" merely because the debtor purchased the annuity when she was past retirement age, all persons past retirement age could move their assets into such an annuity and then file bankruptcy to avoid creditors, clearly a result Congress had not intended. *Id.*

Courts in Missouri have consistently applied *Eilbert*'s general directive that these exemption statutes were intended to replace lost wages, like a retirement plan. *See, e.g.*, *In re Kuhrts*, 405 B.R. 333, 335 (Bankr. W.D. Mo. 2009) (holding that structured settlement proceeds from a personal injury claim was an annuity, which was one of the types of plans described in the statute, but was not one "on account of disability" because the asset was not related to employment and was not created to compensate for diminished wage earning potential); *In re Stover*, 332 B.R. 400, 403 (Bankr. W.D. Mo. 2005) (holding that payments under an annuity that the debtor inherited from his mother [which she purchased with funds she received from her spouse's wrongful death] were not exempt because they were not "received as a result of, or related to, employment"; the statute was not intended to apply to annuities resulting from estate planning or litigation unrelated to employment."); *In re Collett*, 253 B.R. 452 (Bankr. W.D. Mo. 2000) (holding that annuity received as an inheritance was not exempt because the payments were nothing more than an inheritance received in the form of an annuity, and not "on account of death" or as a replacement for lost wages under § 513.430.1(10)(e)).

5

Ms. Taylor expressly stipulated here that "[t]he Annuity is not a replacement for lost wages. . . ." *Stipulation* at ¶ 13.[7] One might argue that the analysis ends there. But Ms. Taylor contends that despite that concession, the Annuity here is exemptable under § 513.430.1(10)(e) because it is a "similar plan or contract" and, since it contains a "death benefit," it is payable "on account of" death.

### *Is the annuity a "similar plan or contract" under the statute?*

As to the requirement that the Annuity be a "similar plan or contract" under the statute, the Eighth Circuit held in *Eilbert* that the word "annuity" is a "purely generic term which refers to the method of payment and not to the underlying nature of the asset," which should not be interpreted to exempt every annuity. 162 F.3d at 526-27 (citations omitted). Rather, the meaning of "annuity" under the statute should be determined by reference to the words surrounding it, namely, "pension . . . or similar plan or contract" and, consistent with the general principle discussed above, describes "a plan or contract to provide benefits in lieu of earnings after retirement" and "other types of retirement plans or investments that are created to fill or supplement a wage or salary void." *Id.* at 527 (citations omitted).

Because the annuity in *Eilbert* was purchased by the debtor in one lump sum (as opposed to contributions over time as part of a long term retirement strategy); was purchased with non-exempt, inherited assets as a prebankruptcy planning measure; and was purchased by a person who happened to have already reached retirement age, the payments under the annuity were not "akin

---

[7] One final note on *Eilbert's* general principle: Some courts have suggested that if Ms. Taylor had been a dependent of her father before he died, the Annuity might be construed as a replacement for the father's lost wages. *See In re Collett*, 253 B.R. at 455 (holding that because the debtor was not a dependent of the aunt who left him the annuity before she died, the annuity could not be construed as a replacement for the aunt's lost wages as Congress intended the statute to be applied). Here, not only did Ms. Taylor stipulate the Annuity is not a replacement for lost wages, she also stipulated that she "was not a dependent of her father at the time of his death." *Stipulation* at ¶ 7.

to future earnings." *Id.* Therefore, the annuity was not a "pension, annuity, or similar plan or contract" within the applicable statute. *Id.*

The Eighth Circuit Bankruptcy Appellate Panel expanded on (and distinguished) *Eilbert* in *In re Andersen*, 259 B.R. 687, 690-91 (B.A.P. 8th Cir. 2001). In that case, the debtor used inherited funds to purchase a $40,000 annuity and sought to claim it exempt under Missouri's § 522(d)(10)(e). Analyzing what the BAP referred to as "the *Eilbert* authorities" (meaning, the Court of Appeals' decision, along with the BAP's *Eilbert* decision below), the BAP in *Andersen* said that a court deciding whether a particular annuity is a "similar plan or contract" under the statute "should examine the facts and circumstances surrounding the purchase of the contract, as well as the nature and contents of the contract." *Id.* at 691.

Courts should not, the BAP said, focus too narrowly on the means by which the annuity is purchased – such as purchasing it with inherited funds. *Id.* Rather, courts may consider numerous factors in the analysis, including:

* Were the payments designed or intended to be a wage substitute?

* Were the contributions made over time? The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy, not merely a recent change in the nature of the asset.

* Do multiple contributors exist? Investments purchased in isolation, outside the context of workplace contributions, may be less likely to qualify as exempt.

* What is the return on investment? An investment which returns only the initial contribution with earned interest or income is more likely to be a nonexempt investment. In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan. That is, will the debtor enjoy a windfall if she outlives her life expectancy? Is she penalized if she dies prematurely?

* What control may the debtor exercise over the asset? If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment.

> \* Was the investment a prebankruptcy planning measure? In this regard, the court may examine the timing of the purchase of the contract in relation to the filing of the bankruptcy case.

*Id.* at 691-92.

The BAP in *Andersen* held that, since it was undisputed that the debtor there had purchased the annuity (albeit, with inherited funds) "in lieu of a retirement plan," that she had no other retirement benefits to look to other than social security, and that she therefore purchased it with the intent that the payments were to be a wage substitute, it qualified as the kind of contract covered by the statute. In so holding, the BAP distinguished *Eilbert*, where the debtor had "freely admitted" she purchased the large annuity shortly before the bankruptcy filing to shield the funds in bankruptcy, and not as any sort of retirement investment. *Id.* at 692-93.

Applying the *Andersen* factors to the facts of this case, the parties here stipulated that Ms. Taylor purchased the Annuity with one lump sum rather than with contributions made over time. One can also conclude from the *Stipulation* that she purchased it "in isolation," and not in the context of workplace contributions. And, given the timing of the purchase in 2004 in relation to her bankruptcy filing in 2020, the court can conclude Ms. Taylor did not purchase the Annuity as a prebankruptcy planning measure. The *Stipulation* does address the other *Andersen* factors such as the return on investment, how payments are computed, and what control Ms. Taylor has over the asset, and the parties did not supply the court with a copy of the Annuity agreement.

Based on the *Stipulation*, one of the *Andersen* factors weighs in favor of Ms. Taylor, namely, that she did not purchase the annuity as a prebankruptcy planning measure. However, once again, Ms. Taylor crucially stipulated that the Annuity is not a replacement for lost wages. Based on the binding authority *Eilbert* as supplemented by *Andersen*, this court concludes that the Annuity is not a "similar plan or contract" under § 513.430.1(10)(5).

*Are the annuity payments "on account of" death?*

The trustee stipulated that "[t]he Annuity policy contains a death benefit and therefore pays 'on account of' death."[8] Ms. Taylor argues that this means the Annuity is payable "on account of" death under the statute.

Because the parties did not submit the Annuity contract to the court, it is unclear exactly what the "death benefit" is. That said, it might at first blush seem as though the trustee conceded the Annuity fits within this element of the statute. But, § 513.430.1(10)(e) exempts "a person's right to receive . . . [a]ny **payment** under" the type of plans described in the statute, not the plan itself. *See In re Helming*, 567 B.R. 357, 362 (B.A.P. 8th Cir. 2017) ("The right to receive the ***payments*** under the Annuity that the Debtor claims as exempt must be because [of] one of the events set forth in the statute.") (emphasis in original).

In *Helming*, after the debtor's spouse passed away, the debtor sold their home and used the proceeds to purchase a $100,000 single premium annuity, and sought to claim it exempt under Missouri's § 513.430.1(10)(e). Turning to the Supreme Court's interpretation of 11 U.S.C. § 522(d)(10)(E) in *Rousey v. Jacoway* by comparison, the BAP interpreted the phrase "on account of illness, disability, death, age, or length of service" to mean "'because of,' thereby requiring a causal connection between the term that the phrase 'on account of' modifies and the factor specified in the statute." *Helming*, 567 B.R. at 362 (discussing *Rousey v. Jacoway*, 544 U.S. 320 (2005)). Thus, the BAP said, "on account of" in § 522(d)(10)(E) requires that the right to receive payment "because" of, or "triggered by" one of those conditions. *Id*.

---

[8] *Stipulation* (#35) at ¶ 8.

The BAP held that the annuity payments at issue in *Helming* were not exempt as being "on account of" the spouse's death because they were not "triggered by" the death, but by her choice to begin receiving payments within 30 days of the payment of the premium. 567 B.R. at 362-63.

Likewise here, despite the fact that the Annuity contains "a death benefit" of some sort (presumably, a payout to someone designated by Ms. Taylor upon her death), and the trustee concedes the Annuity "therefore pays 'on account of' death," the trustee does not stipulate that the *payments* the debtor is receiving under the Annuity are made "because of" or "triggered by" anyone's death. The Annuity therefore fails to meet the requirement that they be "on account of" death. *Accord In re Collett*, 253 B.R. 452 (Bankr. W.D. Mo. 2000) (holding that an annuity which was the result of a testamentary trust was not "on account of death" because it was the result of, or "on account of," the trustee's choice of form in which to give the debtor his inheritance; the fact that the gift was indirectly triggered by the aunt's death and took the form of an annuity did not make it exempt).

**Seventh Circuit Law**

Ms. Taylor essentially concedes that the Annuity payments are not exempt under *Eilbert* and the other cases discussed above. Nevertheless, she urges the court to "reconsider the statutory analysis behind these decisions and side with the reasoning of the Seventh Circuit Court of Appeals" in *Whittman v. Koenig*, 831 F.3d 416 (7th Cir. 2016). This the court cannot do.

Even if this court could consider Seventh Circuit law contrary binding Eighth Circuit authority, the issue in *Whittman* was whether the annuities satisfied an additional requirement under the Wisconsin statute at issue there, namely, whether they complied with certain IRS provisions not applicable here. The *Whittman* case does not support the position that payments under an annuity with a death benefit means the payments under the Annuity are made "on account

of" death or otherwise satisfies the Missouri statute. The other case cited by Ms. Taylor, *In re Bronk*, 775 F.3d 871 (7th Cir. 2015), is equally unavailing, and indeed stands for the proposition that an annuity "must distribute benefits *because of or conditioned on* age, illness, disability, death, or length of service." 775 F.3d at 871 (emphasis in original).[9]

**Conclusion**

For the reasons stated above, the court concludes that, based on the undisputed facts, the trustee has met his burden of proving that Ms. Taylor's Flexible Premium Deferred Annuity issued 5/25/04 with Midland National Life Insurance Company (the "Annuity") is not exempt under Mo. Rev. Stat. § 513.430.1(10)(e). The trustee's Objection to Exemptions (ECF No. 13) is, therefore, SUSTAINED.

  /s/ Cynthia A. Norton
CYNTHIA A. NORTON
United States Bankruptcy Judge

October 28, 2020

---

[9] The court notes that while neither party cited to *Clark v. Rameker*, 134 S. Ct. 2242 (2014), that case reinforces the correctness of the reasoning in *Eilbert*. *Clark* held that funds in an inherited IRA were not "retirement funds" exempt under the federal exemption for IRAs in 11 U.S.C. § 522(d)(12). Noting that the term "retirement" is not defined, the Supreme Court reasoned that courts should look to the ordinary meaning of the term "and look to the legal characteristics of the account in which the funds are held, asking whether as an objective matter, the account is one set aside for the day when an individual stops working." *Clark,* 134 S. Ct. at 2246 (comparing *Rousey v. Jacoway*, 125 S. Ct. 1561 (2005) (holding that traditional IRAs are exempt under the federal exemption for retirement accounts as defined in 11 U.S.C. § 522(d)(10) (E), which, as noted above, contains language very similar to Mo. Rev. Stat. § 513.430.1(10)(e)).